UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA PUNG, Personal Representative
of the Estate of Terri L. Greene,

      Plaintiff,

v

MICHIGAN DEPARTMENT OF
CORRECTIONS, *et al.*,

      Defendants.

_____/

Case No. 1:13-cv-1031

HON. JANET T. NEFF

## OPINION

Pending before the Court in this § 1983 case are motions to dismiss filed by Defendants Michigan Department of Corrections (MDOC), Charles Ruffin, and Mary T. Widener (collectively, "the MDOC Defendants") (Dkt 48); and Defendants Eaton County, Eaton County Sheriff's Department, Michael Raines and Fred McPhail (collectively, "the County Defendants") (Dkt 50). Plaintiff filed one response to both motions (Dkt 55), and the MDOC and County Defendants filed their respective replies (Dkts 53 & 54). Having conducted a Pre-Motion Conference in this matter and having fully considered the parties' written briefs, the Court finds that the relevant facts and arguments have been adequately presented and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). After careful consideration of the parties' arguments and applicable law, the Court grants both motions.

## I. BACKGROUND

This case arises from the tragic death of Terri Greene on September 22, 2011. Terri Greene and her husband, Michael Greene, were murdered at their residence at 7167 Eaton Highway, Delta

Township, Eaton County, Michigan, after sustaining multiple gunshot wounds inflicted by Christopher Perrien, an MDOC inmate (Compl. [Dkt 1] ¶¶ 13, 18).  Plaintiff Linda Pung was appointed the Personal Representative of Terri Greene's estate (Dkt 32).

Previously, on September 1, 2011, Eaton County Circuit Court Judge Thomas Eveland had sentenced Perrien to 300 days in the Eaton County Jail for stealing/retaining a financial transaction device without consent (Compl. ¶¶ 19-20).  At his sentencing, Perrien represented that he was employed with Advanced Building Contractors Inc., located at 4660 South Hagadorn Rd., East Lansing, Michigan 48823-5371 with a telephone number of 517-894-6038 (*id.* ¶ 21).  Perrien provided a letter from his alleged employer, signed by "Crystal Gonzales, Human Resource Manager for Advanced Building Contractors, Inc.," dated August 8, 2011 that indicated that Defendant Perrien was employed with Advanced Building Contractors, Inc. (*id.*).  The letter was filed with the court on September 2, 2011 (*id.*).  Advanced Building Contractors, Inc. is a fictitious company created by Perrien (*id.* ¶ 22).  Judge Eveland ordered Perrien eligible for the work release program between the hours of 8:00 a.m. and 7:00 p.m. Monday through Saturday, with a 45 minute drive time (*id.* ¶ 20).

At the time of his sentencing, Perrien, a fourth habitual offender, was in violation of his parole (Compl. ¶ 20). Additionally, there was a parole violation warrant type #2 issued by the MDOC-Kent/Grand Rapids Office for Perrien that disqualified him from work release (*id.*).  Indeed, Plaintiff alleges that Perrien had "a history of failing to report to his probation officers, of violating parole, of absconding from parole, and of failing to report under work release programs," a history that disqualified him from the work release program (*id.* ¶¶ 33-34).  Plaintiff, who delineates Plaintiff's probation violations in her Complaint, alleges that Perrien violated his parole

2

approximately twenty-six times, absconded on parole at least three times, failed to report on parole

on multiple occasions, and was assigned to work release in 1999 but failed to go to work, all facts

that Defendants knew or should have known (*id.* ¶ 35).  Plaintiff, who also delineates Perrien's

criminal history, alleges that Defendants also knew or should have known that Perrien had a long

and sometimes violent criminal record that disqualified him from the work release program (*id.* ¶¶

32, 34).

MDOC employee Mary Widener was present during Perrien's September 1, 2011 sentencing

and did not object to the court-ordered work release (Compl. ¶ 23).  According to Plaintiff, Widener

knew or should have known that Perrien was not eligible for work release (*id.*).  Charles Ruffin was

the MDOC probation agent assigned to Perrien's case (*id.* ¶ 24).  Ruffin also did not object to

Perrien's court-ordered work release (*id.*).

Plaintiff alleges that on September 16, 2011, Ruffin and his supervisor, Timothy Alana,

"approved" Perrien for work release by executing an Eaton County Sheriff's Office Corrections

Division Work Release Agreement (Compl. ¶ 24).  Plaintiff alleges that had either Ruffin or Alana

made any attempt to verify Perrien's employment with Advanced Building Contractors Inc., they

would have learned that the company was fictitious and that Defendant Perrien was not employed

as required for work release (*id.* ¶ 25).  Plaintiff similarly alleges that neither Eaton County, the

Eaton County Sheriff's Department, Sheriff Michael Raines, Undersheriff Fred McPhail, nor their

employees or agents attempted to verify whether Perrien was actually employed or whether

Advanced Building Contractors, Inc. actually existed, a cursory review of which would have

revealed that no such company existed (*id.* ¶ 26).

3

Plaintiff alleges that on September 22, 2011, rather than going to "work," Perrien went to the Greene residence at 7167 Eaton Highway (Compl.¶ 28).  Perrien robbed and murdered the Greenes with multiple gunshot wounds (*id.*).  According to Plaintiff, Perrien sold the Greenes' belongings, showered at his girlfriend's house, and ate dinner before returning to the Eaton County Jail that same evening (*id.*).  Terri Greene's body was found by her parents in a pond located in the Greenes' backyard (*id.* ¶ 29).  She had been shot twice in the head (*id.*).

Following the murders, Perrien continued to leave the Eaton County jail on work release (Compl. ¶ 30).  Law enforcement officers were able to track Perrien's movements via a global positioning system (GPS) in Terri Greene's cell phone (*id.*).  Additional evidence linked Perrien to the murders, and he was arrested days later while out on work release (*id.*).  Subsequent GPS reports established that Perrien had driven by the Greenes' home approximately three times, "casing" the location in the days leading up to September 22, 2011 and that Perrien's car was located at the Greenes' home on September 22, 2011 between 11:28 a.m. and 1:40 p.m., the time the investigators believe the murders occurred (*id.*).

In April 2013, Perrien was tried and convicted on two counts of first-degree felony murder and two counts of being a felon in possession of a firearm (Compl. ¶ 31).  He is currently serving two life sentences without the possibility of parole in the Oaks Correctional Facility, Manistee County, Michigan, for the September 22, 2011 murders (*id.* ¶ 13).  Perrien is also serving a 20–30 year sentence for a September 2010 home invasion (*id.*).

On September 19, 2013, Plaintiff filed this § 1983 case against the following ten defendants:

1.      Michigan Department of Corrections,

2.      Probation Officer Mary T. Widener,

3.      Probation Officer Charles Ruffin,

4.      Timothy Alana,

5.      County of Eaton,

6.      Eaton County Sheriff Department,

7.      Eaton County Sheriff Michael Raines,

8.      Eaton County Undersheriff Fred McPhail,

9.      John & Jane Does 1-10 ("unknown probation and parole officers employed by the MDOC and/or Eaton County sheriffs deputies," per Compl. ¶ 10); and

10.     Christopher Perrien.

Plaintiff alleges the following eleven counts against the following Defendants:

I.      Common Law Gross Negligence—MDOC, Widener, Ruffin & Alana

II.     Common Law Gross Negligence—John & Jane Does 1-10 (MDOC employees)

III.    Respondeat Superior—MDOC

IV.     Common Law Gross Negligence—Eaton County, Eaton County Sheriff's Department, Raines & McPhail

V.      Common Law Gross Negligence—John & Jane Does 1-10 (county employees)

VI.     Respondeat Superior—Eaton County & Eaton County Sheriff's Department

VII.    Violation of Michigan State Constitution, Substantive Due Process—MDOC, Widener, Ruffin, Alana and John & Jane Does 1-10

VIII.   Violation of Michigan State Constitution, Substantive Due Process—Eaton County, Eaton County Sheriff's Department, Raines, McPhail and John & Jane Does 1-10

IX.     Violation of 42 U.S.C. § 1983—MDOC, Widener, Ruffin, Alana and John & Jane Does 1-10

X.    Violation of 42 U.S.C. § 1983—Eaton County, Eaton County Sheriff's
      Department, Raines, McPhail and John & Jane Does 1-10

XI.   Wrongful Death—Perrien

Plaintiff voluntarily dismissed Alana on January 31, 2014 (Dkt 28).  A default was entered as to

Perrien (Dkt 24), and Plaintiff subsequently filed a Motion for Default Judgment, requesting $10

million from Perrien (Dkt 29), a motion that the Court dismissed without prejudice to Plaintiff re-

filing after the liability of Defendants at bar was resolved (Order, Dkt 34).

Following a Pre-Motion Conference in April 2014, the Court issued an Order permitting the

County and MDOC Defendants to proceed with briefing their proposed motions to dismiss (Order,

Dkt 34).  The parties filed their motion papers in August 2014 (Dkts 48-55).

## II.  ANALYSIS

### A.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) authorizes the court to dismiss a complaint if it

"fail[s] to state a claim upon which relief can be granted[.]"  FED. R. CIV. P. 12(b)(6).  In deciding

a motion to dismiss for failure to state a claim, the court must construe the complaint in the light

most favorable to the plaintiff and accept all well-pleaded factual allegations in the complaint as

true.  *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014).

To survive a motion to dismiss, the complaint must present "enough facts to state a claim to

relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  This is "a context-specific task that requires the reviewing court to draw

on its judicial experience and common sense."  *Id.* at 679.  "The plausibility standard is not akin to

a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint

is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Further, "the

court need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted

factual inference." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012)

(citation and internal quotation marks omitted).

## B.  Discussion

### 1.      § 1983/State-Created Danger Exception (Counts IX & X)

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right

secured by the Constitution or laws of the United States and must show that the deprivation of that

right was committed by a person acting under color of state law.  *Harbin-Bey v. Rutter*, 420 F.3d

571, 575 (6th Cir. 2005).  Plaintiff alleges that the MDOC Defendants and the County Defendants

deprived her of her rights to life and liberty under the Fourteenth Amendment (Compl. ¶¶ 104 &

117).

The Due Process Clause of the Fourteenth Amendment protects persons against State

deprivations "of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV.

Generally, "a State's failure to protect an individual against private violence simply does not

constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Co. Dep't of Soc. Servs.*,

489 U.S. 189, 197 (1989).  The Sixth Circuit recognizes an exception to this general rule for what

is known as a "state-created danger" claim.  "Liability under the state-created danger theory is

predicated upon affirmative acts by the state which either create or increase the risk that an individual will be exposed to private acts of violence." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998) (citations omitted).

The parties agree on the elements of a properly pleaded "state-created danger" claim, as follows (Dkt 49, MDOC Defs.' Br. at 3-4; Dkt 51, Cty. Defs.' Br. at 4; Dkt 55, Pl.'s Resp. at 9).  To state a viable "state-created danger" claim, a plaintiff must allege: "'(1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff.'"  *Jones v. Reynolds*, 438 F.3d 685, 690 (6th Cir. 2006) (quoting *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003)).

(a)     *Affirmative Act*

As to the first element of a "state-created danger" claim, the MDOC Defendants argue that Plaintiff's claim fails as to Defendant Widener because Plaintiff does not allege an affirmative act that increased the danger to Teri Greene (Dkt 49, MDOC Def.'s Br. at 4, citing *Jones*, 438 F.3d at 691 ("a 'failure to act is not an affirmative act under the state-created danger theory ....'") (quoting *Cartwright*, 336 F.3d at 493)).

The County Defendants similarly argue that none of the "acts" Plaintiff alleges against them, even if taken as true, amount to affirmative acts toward the creation of a risk of harm to any person, let alone the decedent (Dkt 51, Cty. Defs.' Br. at 5).  The County Defendants emphasize that they

did not screen Perrien's request or participate in the hearing that led to the Order for work release but merely "implemented" the judge's order (Dkt 54, Cty. Defs.' Reply at 1).

Plaintiff responds that approving Perrien for work release and releasing Perrien from jail on work release are, "under any definition," affirmative acts (Dkt 55, Pl.'s Resp. at 10).  Further, according to Plaintiff, the actions of the MDOC and County Defendants—placing Perrien on work release, signing a Work Release Agreement, and releasing Perrien from jail—"created the risk of private violence to Ms. Greene" (*id.*).  Plaintiff rejects Defendants' argument, pointing out that Perrien, while on work release, drove to and parked at the Greene residence, "casing the location prior to the September 22, 2011 murders" (*id.* at 14-15).

Defendants' argument has merit.

Plaintiff alleges in her Complaint that Defendant Widener "did not object to the court-ordered work release for Defendant Perrien," and that Widener "knew or should have known that Defendant Perrien was not eligible for work release" (Compl. ¶ 23).  Plaintiff also alleges that Widener "failed to verify whether Perrien was actually employed and failed to verify whether Advanced Building Contractors, Inc. actually existed…." (*id.* ¶ 25).  Plaintiff further generally alleges that Widener failed to properly supervise and monitor Perrien, failed to properly investigate Perrien, and failed to arrest or revoke Perrien's probation or parole (*id.* ¶¶ 50, 89 & 105).

Plaintiff alleges that the County Defendants' actions likewise constituted a state-created danger by:

a.     Releasing Defendant Perrien from the Eaton County's and the Eaton County Sheriff's Department's supervision and control on court-ordered work release without verifying Defendant Perrien's employment;

9

b. Releasing Defendant Perrien from Eaton County's and the Eaton County Sheriff's Department's supervision and control on court-ordered work release knowing that Defendant Perrien was not eligible for work release;

c. Releasing from Eaton County's and the Eaton County Sheriff's Department's supervision and control on court-ordered work release Defendant Perrien, a career criminal with a violent history, a record of absconding from parole, a record approximately 26 parole violations, and a record of failing to report to work when previously released from jail on work release;

d. Willfully allowing Defendant Perrien to leave the Eaton County Jail on court-ordered work release without verifying Defendant Perrien's employment;

e. Refusing to implement a policy requiring that a parolee's eligibility for work release be verified before and during work release.

(Compl. ¶ 118.)

"Whether the conduct of government officials in some cases should be treated as a failure to act or as action 'may be a difficult question in the abstract,' but [the Sixth Circuit has] always treated governmental conduct as 'fall[ing] on the inaction side of the line,' when it does not create or increase the risk of peril posed by the private actor." *Jones*, 438 F.3d at 692 (quoting *Bukowski v. City of Akron*, 326 F.3d 702, 709 (6th Cir. 2003), and *May v. Franklin Co. Comm'rs*, 437 F.3d 579, 585 (6th Cir. 2006)).

Relying on *Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 764 (6th Cir. 2010), where the Sixth Circuit held that the officers who released an intoxicated woman from custody did not "create" or "increase" the danger to the plaintiffs, Defendants argue that the work release of Perrien is similarly not the kind of affirmative act necessary to satisfy this first element of Plaintiff's state-created danger claims. Plaintiff attempts to factually distinguish *Smithers* from her case, asserting that the decision instead supports a finding of liability against Defendants, who "committed an affirmative act by approving Perrien for work release and by releasing Perrien from

10

jail on work release" (Dkt 55, Pl.'s Resp. at 11). Plaintiff emphasizes that Defendants "gave Perrien the opportunity to commit murder while in their custody by allowing Perrien to leave the jail daily, in his personal vehicle without having gainful employment" (*id.* at 12).

However, Plaintiff's reliance on *Smithers* is misplaced. The Sixth Circuit held that although releasing the intoxicated woman from custody was an affirmative act, the affirmative act nonetheless did not "create" or "increase" the danger to the plaintiffs. 602 F.3d at 763. Citing earlier precedent on state-created danger claims, the Sixth Circuit explained in *Smithers* that the release of the intoxicated woman "did not constitute an approval of [her] threats any more than the return of the children in *DeShaney* or *Bukowski* encouraged that those children should be further harmed." *Id.* at 764 (citing *DeShaney*, 489 U.S. at 193 (where the state took temporary custody of a minor, who would eventually become the victim, based on suspicions of abusive circumstances, but did not maintain custody of the minor); *Bukowski*, 326 F.3d at 706 (same)). In both *DeShaney* and *Bukowski*, it was held that the state "had played no part in creating the dangers faced by the petitioner nor did it do anything to render him any more vulnerable to them." *Lanman v. Hinson*, 529 F.3d 673, 682 n.1 (6th Cir. 2008).

Here, too, even assuming arguendo that approving Perrien for work release and releasing Perrien from jail on work release are "affirmative acts," Plaintiff's allegations nonetheless do not support the proposition that they are affirmative acts that "created" or "increased" the danger to the decedent. *See, e.g., Duvall v. Ford*, 187 F.3d 635, 1999 WL 486531, at *3 (6th Cir. 1999) (rejecting the plaintiff's argument that the defendants' decision to place the criminal in a work release program with minimal supervision without checking his criminal background created a risk of harm to her

because the defendants' conduct was "simply too attenuated from the harm that resulted to Duvall to impose liability").

In short, Plaintiff's factual allegations are insufficient to support the first element of a state-created danger claim against Defendant Widener and the County Defendants. Plaintiff's state-created danger claim is properly dismissed as against Defendant Widener and the County Defendants for failure to state a claim.

(b)     *Special Danger & Knowledge*

Next, as to the second and third elements of a state-created danger claim, the MDOC Defendants argue that Plaintiff also cannot establish a special danger specific to the decedent, rather than the public at large, or that Defendants Widener or Ruffin knew or should have known that Perrien posed a specific danger to the decedent (Dkt 49, MDOC Defs.' Br. at 6). The MDOC Defendants point out that the GPS information was not obtained until after the murders and that there are no factual allegations in the Complaint from which to infer that Defendants Widener or Ruffin knew or should have known of Perrien's alleged "casing" of the Greene residence before the murders (Dkt 53, MDOC's Reply at 3).

The County Defendants similarly argue that there are no allegations (or evidence) that any of these Defendants could possibly have known that the decedent would be targeted for robbery and murder by Perrien (Dkt 51, Cty. Defs.' Br. at 7-8). The County Defendants similarly assert that there is no evidence that Perrien even knew his victims before committing the crimes at issue (*id.*; Dkt 54, Cty. Defs.' Reply at 2-3).

In response, Plaintiff asserts that "[a] special relationship was formed between Perrien and the MDOC Defendants and the Eaton County Defendants because Perrien was a parolee/inmate

being held in their custody whose release was governed by the Work Release Agreement" (Dkt 55, Pl.'s Resp. at 13).  As authority for this proposition, Plaintiff relies on *Nishiyama v. Dickson Cty.*, 814 F.2d 277 (6th Cir. 1987) (en banc), indicating that the decision was "implicitly overruled on other grounds" (*id.* at 12, n.8).

Defendants' argument has merit.

As with the affirmative act requirement, courts have set a "high bar" for plaintiffs attempting to satisfy the special danger requirement.  *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 468 (6th Cir. 2006) (quoting *Kallstrom*, 136 F.3d at 1066).  As the MDOC Defendants point out, Plaintiff does not allege that any of Perrien's history of criminality, violence, and non-conformity related specifically to the decedent in any way, nor does Plaintiff allege that any action or inaction on the part of Widener or Ruffin regarding Perrien's work release created a special danger to the decedent, specifically, as opposed to the public at large  (Dkt 49, MDOC Defs.' Br. at 7).  Defendants further point out that Plaintiff has not pleaded facts that either Widener or Ruffin knew or should have known that failing to supervise, monitor, investigate, or arrest Perrien posed a specific danger to the decedent (*id.*).

In contrast, as the County Defendants point out, in cases where the Sixth Circuit has recognized a state-created danger, "the risk of harm involved was so apparent and specific that the government could have specifically identified the individual placed at risk by its affirmative acts, nearly to the point of being able to name the possible victim or victims" (Dkt 51, Cty. Defs.' Br. at 6-7, citing *Caldwell v. City of Louisville*, 120 F. App'x 566, 573 (6th Cir. 2004) (concluding that where the threat posed by an abusive husband was only to his wife, the state action "place[d] the victim specifically at risk"); *Waller v. Trippett*, 49 F. App'x 45, 50 (6th Cir. 2002) (concluding that

13

public employees working in a prison kitchen were a "limited and specifically definable group," satisfying the special-danger requirement); *Duvall, supra* (dismissing on grounds of no affirmative act but acknowledging specific endangerment where a prisoner incarcerated for abusing his wife escaped and fired shots into the trailer where she was living, injuring a family member); *Kallstrom*, 136 F.3d at 1067 (releasing the personnel files of undercover officers, including information about their families and homes, to defense attorneys specifically endangered the officers and their families)). *Cf. Kennerly v. Montgomery Cty. Bd. of Comm'rs*, 257 F. Supp. 2d 1037, 1044 (S.D. Ohio 2003) ("*Kallstrom* is not ambiguous: the government must be aware that its actions will increase the vulnerability of a specific individual to criminal danger.").

The Court agrees that Plaintiff's factual allegations are insufficient to support the second and third elements of a state-created danger claim against the County Defendants and Defendants Widener and Ruffin. Plaintiff only alleges facts creating an inference that Perrien posed a danger to the public at large. Plaintiff's "special relationship" argument does not lead to a different conclusion. In *Nishiyama*, which the Sixth Circuit decided without the benefit of the Supreme Court's opinion in *DeShaney*, the involved state officers had an established practice of entrusting the criminal with unsupervised use of a patrol car, and the Sixth Circuit concluded that, taking the facts in the light most favorable to the plaintiffs, a jury could conclude that the officers facilitated the crime that ensued when the criminal stopped an unwitting motorist. 814 F.2d at 281. The Sixth Circuit reasoned that unlike prior cases, where "the identity of potential victims was difficult to define," the "radius of harm" in *Nishiyama* was "more distinct," to wit: the radius included "persons in the vicinity ..., particularly motorists who out of respect for and fear of law enforcement vehicles respond to blue flashing lights." *Id.* at 280.

14

Like Plaintiff's failure to link Defendants' affirmative acts to the creation or increase of danger to the decedent, Plaintiff here fails to link the purported "special relationship" arising from Perrien's court-ordered work release to Perrien's criminal acts. As Defendants point out, there is no allegation (or evidence) that any of these Defendants could possibly have known that the decedent would be targeted for robbery and murder by Perrien. The "radius of harm" was not distinct, as in *Nishiyama*, but generalized and remote. Plaintiff does not allege that Perrien's criminal history related specifically to the decedent in any way, nor does Plaintiff allege that any action or inaction by Defendants created a special danger to the decedent, in particular. Plaintiff's allegations therefore do not support the second or third elements of a plausible state-created danger claim.

For the foregoing reasons, Plaintiff's allegations of a Fourteenth Amendment violation, even taken as true, do not fit within the exception to the general rule that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause. Her state-created danger claims against these Defendants are therefore properly dismissed.

(c)    *Qualified Immunity*

Given this Court's determination that Plaintiff has not stated a plausible constitutional violation, the individual Defendants need not seek the protection of qualified immunity. Nonetheless, the Court next turns to the MDOC Defendants' argument that Defendants Widener and Ruffin are otherwise entitled to qualified immunity because Plaintiff fails to allege the violation of a clearly established constitutional right (Dkt 49, MDOC Defs.' Br. at 7-8). The County Defendants similarly argue that individual Defendants Raines and McPhail are entitled to qualified immunity for the reason that there was no clearly established law that required these Defendants to protect

Plaintiff's decedent from an unspecific and unknown risk of random attack by an individual on work release status (Dkt 51, Cty. Defs.' Br. at 10).

Plaintiff rejects the proposition that Defendants Widener, Ruffin, Rains and McPhail are entitled to qualified immunity on her § 1983 claims (Dkt 55, Pl.'s Resp. at 19). According to Plaintiff, because her Complaint alleges sufficient facts to establish that the decedent's Fourteenth Amendment rights were violated, "the only issue is whether the right was so clearly established that Defendants' actions were objectively unreasonable" (*id.* at 26). Again relying on *Nishiyama, supra,* Plaintiff argues that "it would have been clear to a reasonable person in Defendants' position that releasing Perrien from jail on work release when Perrien was not eligible for work release and did not have valid employment, which placed Ms. Greene in a dangerous environment, could subject the individual Defendants to constitutional liability" (*id.* at 27).

Defendants' argument for dismissal based on immunity also has merit.

The parties agree that government officials performing discretionary functions generally are shielded from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known (Dkt 49, MDOC Defs.' Br. at 3-4; Dkt 51, Cty. Defs.' Br. at 11; Dkt 55, Pl.'s Resp. at 19-20). To determine if qualified immunity attaches to an official's conduct, courts employ a two-step analysis. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, the Court must determine whether, based on the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred. If no constitutional rights were violated, "there is no necessity for further inquiries concerning qualified immunity." *Id.* at 201. If, however, a violation could be made out, then the court must then determine whether the right was clearly established at the time of the official's

conduct. *Id.* Whether a law is "clearly established" must be "undertaken in light of the specific context of the case, not as a broad general proposition." *Floyd v. City of Detroit*, 518 F.3d 398, 405 (6th Cir. 2008) (quoting *Saucier, supra*). The two inquiries need not be made sequentially. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Jefferson v. Lewis*, 594 F.3d 454, 460 (6th Cir. 2010).

Even assuming arguendo that a plausible constitutional violation could be found on the allegations in the Plaintiff's Complaint, Defendants have identified no case law indicating that it was "clearly established" that parole or probation agents failing to prevent a parolee's work release or failing to properly supervise or monitor a potentially violent parolee could be held liable under the state-created danger exception. And Plaintiff also concedes as much, opining that a right can nonetheless be clearly established "even if there is no case involving fundamentally similar or materially similar facts if the premise of a prior case alerts officials to the clear applicability other legal principle to a subsequent set of facts" (Dkt 55, Pl.'s Resp. at 20, quoting *Scicluna v. Wells*, 345 F.3d 441, 446 (6th Cir. 2003) (internal citations and quotation marks omitted)). Under this Court's analysis of Plaintiff's § 1983 claims, the right Plaintiff claims was not clearly established at the time of Defendants' actions or inactions. Therefore, under either prong of the inquiry, Defendants Widener, Ruffin, Rains and McPhail are entitled to qualified immunity on Plaintiff's § 1983 claims against them.

(d)     *The County's Liability*

The County Defendants also argue that Plaintiff's municipal liability claim against Defendant Eaton County fails because the entity may only be held liable when "action pursuant to official municipal policy of some nature causes a constitutional tort" (Dkt 51, Cty. Defs.' Br. at 9-10, quoting *Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658, 691 (1978)). The County Defendants argue that

Plaintiff has not alleged any violation of civil rights, let alone a violation that was the result of an unconstitutional policy, custom or practice approved by the Sheriff or any other governing body of Eaton County, nor is there any evidence to suggest that there has been a pattern or practice of violating civil rights in the manner alleged by Plaintiff (*id.* at 10).

Plaintiff responds that (1) she has alleged sufficient facts to establish that her constitutional right to substantive due process as enforced by 42 U.S.C. § 1983 was abridged; and (2) she has sufficiently alleged that Eaton County has an unwritten unconstitutional custom, policy or practice of releasing probationers for work release without first determining whether those individuals are eligible for work release and whether those individuals had gainful employment (Dkt 55, Pl.'s Resp. at 29).

Defendants' argument for dismissal has merit.

Again, as discussed *supra,* Plaintiff's allegations of a Fourteenth Amendment violation, even taken as true, do not fit within the exception to the general rule that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause. "Congress did not intend § 1983 liability to attach where such causation was absent." *Monell*, 436 U.S. at 692. Accordingly, there is no foundation for finding Eaton County liable under Plaintiff's § 1983 theory.

### 2. The Sheriff's Department's Liability

The County Defendants argue that Plaintiff's claims against the Eaton County Sheriff's Department fail because the Sheriff's Department is simply an agency of the county, not a separate legal entity capable of being sued (Dkt 51, Cty. Defs.' Br. at 11, citing *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (holding that the county jail is a simply a department of the county, and not

the appropriate party to address the plaintiff's suit); *Vine v. Cnty. of Ingham*, 884 F. Supp. 1153, 1158 (W.D. Mich. 1995) (holding, under Michigan law, that a county sheriff's department is not a legal entity subject to suit)).

In response, Plaintiff indicates that she is "satisfied that Plaintiff has stated sufficient claims for relief against the Eaton County, Eaton County Sheriff Michael Raines, and Eaton County Undersheriff Fred McPhail," and therefore "consents to the dismissal of the Eaton County Sheriff's Department from this action" (Dkt 55, Pl.'s Resp. at 30-31).   Accordingly, the Eaton County Sheriff's Department will be dismissed as a party to this action.

### 3.        Gross Negligence (Counts I–VI)

The MDOC Defendants argue that Plaintiff has failed to state a claim for gross negligence (Dkt 49, MDOC Defs.' Br. at 10).   The MDOC Defendants argue that Plaintiff has not pleaded any action or inaction on the part of any Defendant that even remotely approaches the relevant standard of conduct, to wit:  "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results," MICH. COMP. LAWS § 691.1407(7)(a) (*id.*).   The MDOC Defendants argue that even assuming arguendo that Defendants' alleged acts could support a finding that they were grossly negligent, the allegations do not support a finding that any Defendant was *the* proximate cause of Plaintiff's injuries (*id.*).

The County Defendants similarly argue that MICH. COMP. LAWS § 691.1407(2) and (5) immunity applies to all of Plaintiff's state-law claims, given that co-Defendant Perrien was "the proximate cause" of the decedent's death (Dkt 51, Cty. Defs.' Br. at 8-9).   The County Defendants also argue that Plaintiff's respondeat superior claims fail, as a matter of law, where immunity applies (*id.* at 9, citing *Malcolm v. City of E. Detroit*, 468 N.W.2d 479, 483 (Mich. 1991)).

19

In response, Plaintiff frames the question as "whether the Complaint contains 'sufficient factual matter' allowing this Court to draw a reasonable inference that Defendants committed gross negligence, proximately causing Plaintiff's injuries" (Dkt 55, Pl.'s Resp. at 22). Relying on *Rupert v. Dagget*, 695 F.3d 417, 426 (6th Cir. 2012), Plaintiff posits that "Michigan law contemplates more than one proximate cause contributing to an injury" (*id.* at 22-25). Plaintiff argues that Defendants' failure to identify and respond to the risk of harm that Perrien posed to the decedent was the proximate cause of the decedent's injury and death (*id.* at 25). According to Plaintiff, "it cannot be said that Perrien alone was the 'most immediate, effective, and direct cause preceding' the death of Ms. Greene where, but for the grossly negligent acts of the Defendants, Perrien would have been in jail, physically incapable of killing Ms. Greene" (*id.* at 26). Last, in response to the County Defendants' challenge to holding Defendant Raines liable on a respondeat superior theory, Plaintiff asserts that "where, as here, governmental immunity does not apply and an employee commits a tort in the course and scope of their employment, vicarious liability may be imposed" (*id.* at 27).

Defendants' arguments for dismissal have merit.

"Michigan's governmental tort liability act provides governmental employees with immunity from tort liability for injuries they cause during the course of their employment so long as the employee's conduct 'does not amount to gross negligence that is the proximate cause of the injury or damage.'" *Livermore v. Lubelan*, 476 F.3d 397, 408 (6th Cir. 2007) (quoting MICH. COMP. LAWS § 691.1407(2)(c)). The parties do not dispute that the governmental employees in this case were acting under color of law and in the course of their employment at the time alleged in the Complaint. The Michigan supreme court has defined proximate cause in gross negligence cases, the pivotal issue here, as "the one most immediate, effective, and direct cause preceding an injury." *Robinson*

20

*v. City of Detroit*, 613 N.W.2d 307, 317 (Mich. 2000) (interpreting MICH. COMP. LAWS § 691.1407(2)).  Plaintiff's reliance on a contrary proposition in *Rupert*, and indeed, the bulk of her argument, is misplaced, because *Rupert* is a negligence case, not a gross negligence case interpreting MICH. COMP. LAWS § 691.1407(2) and the heightened "proximate cause" requirement articulated in *Robinson*.

Plaintiff alleges, and there is no dispute, that Perrien was convicted of the decedent's murder and is currently serving a life sentence without the possibility of parole (Compl. ¶ 13).  The Court agrees with Defendants that any action or inaction on the part of any Defendant cannot have been the "one most immediate ... and direct cause" of the decedent's death on these admitted facts.  *See, e.g., Jasinski v. Tyler*, 729 F.3d 531, 544-45 (6th Cir. 2013) (interpreting MICH. COMP. LAWS § 691.1407(2) in the plaintiff's state-law gross-negligence claim arising from the murder of her son by his father and concluding that the conduct of the Child Protective Services employees "cannot be said to be the 'most immediate, efficient, and direct cause' of the injury").  As a result, Plaintiff's gross negligence claims are also properly dismissed.

## 4.    Michigan Tort Claims (Counts VII & VIII)

The MDOC Defendants argue that Plaintiff's attempt to sue Defendants Widener and Ruffin for money damages under a theory of violation of the Michigan Constitution fails because such a cause of action is not recognized under Michigan law (Dkt 49, MDOC Defs.' Br. at 12, citing *Jones v. Powell*, 612 N.W.2d 423, 426-27 (Mich. Ct. App. 2000) (finding no inferred damages remedy for a violation of State Constitution exists against an individual government employee because other remedies are available against such defendants).  The County Defendants similarly argue that no such remedy exists for violation of the Michigan Constitution in an action against a municipality or

a government employee sued in his individual capacity (Dkt 51, Cty. Defs.' Br. at 11-12, citing *Jones, supra*).

In response, Plaintiff opines that she "does not believe that such a bar is absolute [as] Michigan courts have recognized that a plaintiff may state a valid cause of action for damages under Art. 1, Sec. 17 of the Michigan Constitution for violations of plaintiffs' substantive due process rights" (Dkt 55, Pl.'s Resp. at 28, citing *Cummins v. Robinson Twp.*, 770 N.W.2d 421 (Mich. Ct. App. 2009)).  Alternatively, Plaintiff opines that her "damages remedy for Defendants' substantive due process violations are adequately protected and pursued herein under 42 U.S.C. § 1983 and Michigan tort law" (*id.*).

Defendants' argument for dismissal has merit.

While a damages remedy for violation of the Michigan Constitution may be inferred against the State, or State officials sued in their official capacity, *see Smith v. Dep't of Public Health*, 410 N.W.2d 749 (Mich. 1987), aff'd sub nom *Will v. Dep't of State Police*, 491 U.S. 58 (1989), no such remedy exists for violation of the Michigan Constitution in an action against a municipality or a government employee sued in his individual capacity.  *Jones v. Powell*, 612 N.W.2d 423 (Mich. 2000).  *See, e.g., Patton v. Vill. of Cassopolis*, No. 301754, 2012 WL 205832, at *4 (Mich. Ct. App. Jan. 24, 2012) (affirming the trial court's determination that the plaintiff failed to state a claim upon which relief may be granted so as to warrant summary disposition).  As a result, Plaintiff's Michigan tort law claims are also properly dismissed.

5.      **Sovereign Immunity**

Last, the MDOC Defendants argue that the Eleventh Amendment affords the MDOC and its employees in their official capacities immunity from suit, regardless of the type of relief requested or the theory of liability (Dkt 49, MDOC Defs.' Br. at 12-13).

In response, Plaintiff "consents to dismissal of the MDOC and Widener and Ruffin, in their official capacities only, without prejudice, with the right to proceed against these same Defendants in the State court of appropriate jurisdiction" (Dkt 55, Pl.'s Resp. at 31).

However, the Court has determined, *supra*, that Plaintiff's claims against the MDOC and Widener and Ruffin in their official capacities fail to state a claim.  Therefore, the dismissal will be with prejudice.  *See Starkey v. JPMorgan Chase Bank, NA*, 573 F. App'x 444, 449 (6th Cir. 2014) (noting that the "default rule is that 'if a party does not file a motion to amend or a proposed amended complaint' in the district court, 'it is not an abuse of discretion for the district court to dismiss the claims with prejudice'") (quoting *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 44 (6th Cir. 2012)).

## III.  CONCLUSION

For the foregoing reasons, the Court determines that the MDOC Defendants' motion to dismiss (Dkt 48) and the County Defendants' motion to dismiss (Dkt 50) are both properly granted. An Order will be entered consistent with this Opinion.


Date:  March 30, 2015                                  /s/ Janet T. Neff
                                                       JANET T. NEFF
                                                       United States District Judge

23